16 CV 6610

JUDGE KAPLAN

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

TELEBRANDS CORP.,

        Plaintiff,

        v.

AS SEEN ON TV, INC., TV GOODS, INC.,
BOB DECECCO, RON RULE, XYZ
CORPORATIONS 1-10, and JANE AND
JOHN DOES 1-10,

        Defendants.

Civil Action No:

JURY TRIAL DEMANDED

---

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS APPLICATION FOR**
**EXPEDITED DISCOVERY IN AID OF PRELIMINARY INJUNCTION**

David S. Stone
Riadh Quadir
STONE & MAGNANINI LLP
100 Connell Drive, Suite 2200
Berkeley Heights, NJ 07922
Tel: (973) 218-1111
Fax: (973) 218-1106
dstone@stonemagnalaw.com
rquadir@stonemagnalaw.com

Dated: August 22, 2016

*Attorneys for Plaintiff Telebrands Corp.*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................... 1

STATEMENT OF FACTS .................................................................................................. 5

    A.    General Background Information. .................................................................. 5

    B.    E-Commerce Websites. ................................................................................. 6

    C.    Defendant Ron Rule's Business Proposal. ..................................................... 8

    D.    Defendants Launch the New Website Using the Domain
         www.seenontv.com. ...................................................................................... 9

LEGAL ARGUMENT ....................................................................................................... 11

I.     Legal Standard for Expedited Discovery. .......................................................... 11

II.    An Order Directing Expedited Discovery is Appropriate Given Defendants'
      Continued Misconduct and the Irreparable Harm it is Causing Telebrands. .... 13

    A.    Telebrands Meets the Reasonableness Standard for Expedited Discovery. ......... 14

    B.    Should the Court Apply the Notaro Factors, Expedited Discovery Should
        Still Be Permitted. ....................................................................................... 17

        (1)    Irreparable Injury. ............................................................................ 17

        (2)    Some probability of success on the merits. ..................................... 18

                a. Unfair Competition – False Designation of Origin
                   (Lanham Act (15 U.S.C. § 1125(a))
                   and New York Common Law) ......................................... 18

                b.    Trademark Infringement (New York Common Law) ....................... 20

        (3)    Some connection between the expedited discovery and the
               avoidance of the irreparable injury. ............................................... 21

        (4)    Some evidence that the injury that will result without expedited
               discovery looms greater than the injury that the defendant will suffer
               if the expedited relief is granted. .................................................... 21

CONCLUSION .................................................................................................................. 22

## TABLE OF AUTHORITIES

**Cases**

*1-800 Contacts, Inc. v. WhenU.com, Inc.,*
    414 F.3d 400 (2d Cir. 2005) ............................................................................................ 20

*American Cyanamid Co. v. Campagna Per La Farmacie in Italia S.P.A.,*
    678 F. Supp. 1049 (S.D.N.Y. 1987) ............................................................................... 17

*Ayyash v. Bank Al-Madina,*
    233 F.R.D. 325 (S.D.N.Y. 2005) .................................................................................... 12

*Boathouse Group, Inc. v. TigerLogic Corp.,*
    777 F. Supp. 2d 243 (D. Ma. 2011) ............................................................................... 17

*CIENA Corp. v. Jarrard,*
    203 F.3d 312 (4th Cir. 2000) .......................................................................................... 15

*Edudata Corp. v. Scientific Computers, Inc.,*
    599 F. Supp. 1084 (D. Minn. 1984), *aff'd in part*, 746 F.2d 429 (8th Cir. 1984) ................... 15

*Ellsworth Associates, Inc. v. United States,*
    917 F. Supp. 841 (D.D.C. 1996) .................................................................................... 15

*EXL Labs, LLC v. Egolf,*
    No. 10-6282, 2010 U.S. Dist. LEXIS 131105 (E.D. Pa. Dec 7, 2010) ................................ 15

*Fischer v. Forrest,*
    No. 14 Civ. 1304(PAE), 2015 U.S. Dist. LEXIS 4395 (S.D.N.Y. Jan. 13, 2015) ................. 19

*Hausser + Taylor LLC v. RSM McGladrey, Inc.,*
    No. 1:07CV2832, 2007 U.S. Dist. LEXIS 70098 (N.D. Ohio, Sept. 21, 2007). ...................... 15

*InterMetro Indus. Corp v. Kent,*
    No. 3:CV-07-0075, 2007 U.S. Dist. LEXIS 10559 (M.D. Pa., Feb. 12, 2007) ...................... 15

*KeyBank, Nat'l Ass'n v. Quality Payroll Sys.,*
    No. CV 06-3013, 2006 U.S. Dist. LEXIS 42078 (E.D.N.Y. June 22, 2006) ........................ 11

*Litwin v. OceanFreight, Inc.,*
    865 F. Supp. 2d 385 (S.D.N.Y. 2011) ..................................................................... 11, 12

*Medisim Ltd. v. Best Med LLC,*
    910 F. Supp. 2d 591 (S.D.N.Y. 2012) ..................................................................... 18, 19

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. O'Connor,*
    194 F.R.D. 618 (N.D. Ill. 2000) ..................................................................................... 12

*Naked Cowboy v. CBS,*
    844 F. Supp. 2d 510 (S.D.N.Y. 2012) ............................................................................ 19

*Nextgen Healthcare Info. Sys. v. Messier,*
    No. 05-cv-5230, 2005 U.S. Dist. LEXIS 27243 (E.D. Pa., Nov. 10. 2005) .......................... 15

*Tiffany (NJ) Inc. v. eBay, Inc.*,
   576 F. Supp. 2d 463 (S.D.N.Y. 2008) ............................................................ 20

*Nobel Biocare USA, Inc. v. Lynch*,
   No. 99 C 5774, 1999 U.S. Dist. LEXIS 23252 (N.D. Ill., Sept. 22, 1999).............................. 15

*Notaro v. Koch*,
   95 F.R.D. 403 (S.D.N.Y. 1982) ....................................................... 12, 17, 22

*OMG Fidelity, Inc. v. Sirius TechTechs., Inc.*,
   239 F.R.D. 300 (N.D.N.Y. 2006) ...................................................................... 13

*Sly Magazine, LLC v. Weider Publ'ns LLC*,
   346 Fed. App'x 721 (2d Cir. 2009) .................................................................. 19

*Standard Inv. Chartered, Inc. v. Nat'l Ass'n of Sec. Dealers, Inc.*,
   No. 07 Civ. 2014, 2007 U.S. Dist. LEXIS 27342 (S.D.N.Y. Apr. 11, 2007) .......................... 13

*Stern v. Cosby*,
   246 F.R.D. 453 (S.D.N.Y. 2007) ...................................................................... 12

*Taylor LLC v. RSM McGladrey, Inc.*,
   No.1:07CV2832, 2007 U.S. Dist. LEXIS 70098 (N.D. Ohio, Sept. 21, 2007) ....................... 15

*Twentieth Century Fox Film Corp. v. Mow Trading Corp.*,
   749 F. Supp. 473 (S.D.N.Y 1990) .................................................................... 18

*United States v. Erie Cnty.*,
   No. 09-CV-849S, 2010 U.S. Dist. LEXIS 144503 (W.D.N.Y. Mar. 6, 2010) ............ 12, 13, 14

*Wachovia Sec., L.L.C. v. Stanton*,
   571 F. Supp. 2d 1014 (N.D. Ia. 2008) ............................................................. 15

**Statutory Authorities**

15 U.S.C. § 1114(1)(a)........................................................................... 20

15 U.S.C. § 1125(a) .............................................................................. 18

**Rules and Regulations**

Fed. R. Civ. P. 26 ............................................................................. 4, 11

Fed. R. Civ. P. 30 ............................................................................. 4, 11

Fed. R. Civ. P. 33(c) ............................................................................ 11

Fed. R. Civ. P. 34 ............................................................................. 4, 11

Plaintiff, Telebrands Corp. ("Telebrands"), respectfully submits this memorandum of law in support of its Application for Expedited Discovery in Aid of Preliminary Injunction against Defendants As Seen On TV, Inc., TV Goods, Inc., Bob DeCecco, and Ron Rule (collectively, "Defendants").

The requested reciprocal expedited discovery is reasonably calculated to lead to the discovery of admissible evidence pursuant to Rule 26 of the Federal Rules of Civil Procedure, is necessary to prevent irreparable harm to Telebrands, and will allow the parties to develop a complete record to assist this Court in making factual findings of Defendants' misconduct in aid of its resolution of Telebrands' request for a preliminary injunction. To be clear, Telebrands is not seeking a temporary restraining order by way of this Application, but instead is seeking limited *reciprocal* expedited discovery in aid of its application for a preliminary injunction.

## PRELIMINARY STATEMENT

Telebrands has recently quantitatively confirmed—via sophisticated analytics tools—that Defendants' unlawful, fraudulent, and bad-faith acts (including taking advantage of Telebrands' goodwill by intentionally creating consumer confusion) have dramatically disrupted the revenue Telebrands has been generating through its e-commerce website. The present untenable circumstances, requiring immediate judicial assistance and intervention, are the result of Defendants' actions beginning in 2014.

In mid-2014, Defendants learned that Telebrands was seeking to buttress its position as leader in marketing, promoting, and selling "As Seen On TV" products online, and actively solicited Telebrands[1] to acquire—for $3,000,000—Defendants' "As

---

[1] Telebrands created the now ubiquitous logo, which is associated with the phrase "As Seen On TV," and corresponding brick-and-mortar market in 1987.

Seen On TV" e-commerce website located at the domain www.asseenontv.com (the "ASTV.COM Website"), as well as over one-hundred and thirty "As Seen On TV"-related domains (variations of asseenontv.com, like as-seenontv.com, the purpose of which were to help redirect consumers to the ASTV.COM Website, as well as prevent unscrupulous actors from cybersquatting), three trademarks (incorporating the phrase "As Seen On TV"), and a telephone number (1-866-ASSEENONTV) (collectively the "Additional Assets"). Defendants had themselves acquired the ASTV.COM Website only few years earlier for approximately $5,000,000.00. In an attempt to mislead and defraud Telebrands, Defendants excluded one critical asset—the domain www.seenontv.com—from this transaction with Telebrands, which was fully executed on October 28, 2016. Defendants' withholding of the domain seenontv.com, in tandem with their post-transaction acts, have substantially diminished the true value of the ASTV.COM Website and Additional Assets.

During the course of negotiations, Defendants never made any representations that they intended to reenter the business of marketing, promoting, and selling "As Seen On TV" products online after divesting the ASTV.COM Website and Additional Assets. In fact, two Defendants, Bob DeCecco and Ron Rule (both C-Suite employees at Defendant As Seen On TV, Inc.) actively sought to leave Defendant As Seen On TV, Inc. for employment with Telebrands to help manage and operate—post-acquisition—the ASTV.COM Website. Yet, after finalizing the transaction, Defendants collectively designed, developed, and began operating a brand new (never before existing) e-commerce website located at www.seenontv.com (the "New Website") (a domain name that should have been included among the Additional Assets) and using trademarks

incorporating the phrase "As Seen On TV" – to market, promote, and sell "As Seen On TV" goods, with the intention to take advantage of Telebrands' goodwill, and confuse and redirect consumers seeking the "As Seen On TV" products Telebrands markets, promotes, and sells on the ASTV.COM Website.

Defendants' deployment and continued operation of the New Website, located at the domain seenontv.com, undermines and frustrates Telebrands' raison d'être for acquiring from Defendants the ASTV.COM Website (and Additional Assets) located at domain asseenontv.com.

Telebrands has recently quantitatively confirmed, via web analytics tools, that the New Website is disrupting the revenue Telebrands generates through marketing, promoting, and selling "As Seen On TV" products on the ASTV.COM Website—by using a domain, trademarks, and internet search engine keywords that are confusingly similar to those belonging to Telebrands. Telebrands has also discovered that Defendants are falsely advertising at least one product sold on the New Website as being marketed, promoted, and sold on television – when in fact, it is not. This is another example of Defendants blatantly taking advantage of Telebrands' goodwill, reputation, brand recognition, and market power.

Defendants are intentionally causing consumer confusion and directing consumers seeking Telebrands "As Seen On TV" products available on the ASTV.COM Website to the New Website for their financial gain. Defendants' bad-faith and intentional acts have caused Telebrands irreparable harm, and if not enjoined, will continue to cause Telebrands irreparable harm.

3

In this action, based primarily in contract, intellectual property infringement, and unfair competition, Telebrands seeks not only damages but also immediate injunctive relief to enjoin Defendants from (1) operating the New Website (at any domain, including its current primary domain seenontv.com), (2) using "As Seen On TV" trademarks on the New Website that are confusingly similar to those owned by Telebrands and used on the ASTV.COM Website, (3) using "As Seen On TV"-related internet search engine keywords and terms that are confusingly similar to those used by Telebrands for the ASTV.COM Website, and (4) selling the "Copper Pro Pan" on the New Website (because it is not marketed, promoted, and sold on television). Defendants' conduct is causing a likelihood of confusion among consumers as to the source of "As Seen On TV" products in the marketplace.

In support of the instant Application, Telebrands will seek, pursuant to Rules 26(d), 30(a)(2), 33(a), and 34(b) of the Federal Rules of Civil Procedure, narrow, reciprocal expedited discovery of information to assist the parties in developing a complete record upon which this Court may make factual findings in aid of resolving Telebrands' application for injunctive relief. More specifically, Telebrands respectfully requests that the Court allow the parties to propound reciprocal document requests and interrogatories as part of an expedited discovery schedule and conduct limited depositions, including Fed. R. Civ. Proc. 30(b)(6) depositions, and Defendant Bob DeCecco's and Defendant Ron Rule's depositions, with respect to, among other things:

1. Defendants' registration, assumption of control, management, and use of the domain seenontv.com (*incl.* Registrar account number, individuals with administrative access to the Registrar account, and reasons for not transferring it to Telebrands);

2. Defendants' research (competitive intelligence, brand, market, and IP infringement analysis) performed prior to and since launching the New Website (*incl.* as to Telebrands and the ASTV.COM Website);

3. Defendants' decision to use "As Seen On TV" trademarks and "As Seen On TV"-related internet search engine keywords and terms in conjunction with the New Website;

4. Defendants' selling of "As Seen On TV" products on the New Website that are not marketed, promoted, and sold on television – during the period 2015 to present;

5. Defendants' revenues stemming from the New Website – for the period 2015 to present; and

6. Defendants Bob DeCecco's and Ron Rule's roles in the sale of the ASTV.COM Website to Telebrands, roles in the development and operation of the New Website, and reasons for seeking employment with Telebrands – during the period 2014 to 2015.

In a nutshell, this discovery will focus on how and why Defendants did not transfer the critical seenontv.com asset, and the development, launch, and operation of the New Website which Telebrands has quantifiably established as unlawfully drawing revenue away from the ASTV.COM Website. This request for reciprocal expedited discovery is in the interests of justice, will promote judicial efficiency, and lead to a more accurate determination of the merits of Telebrands' application for an injunction.

## STATEMENT OF FACTS

### A. General Background Information.

Plaintiff Telebrands Corp. ("Telebrands") is a long-standing and award-winning global direct response company that designs, markets, promotes, and sells a vast array of innovative consumer products. (Compl. at ¶ 21). The company is widely-identified as the source of countless innovative consumer products it markets, promotes, and sells under the logo which is associated with the "As Seen On TV" brand – a brand based on

the phrase Telebrands coined in 1987. (*Id.* at ¶¶ 22, 23). The company has encouraged public use of the logo to describe products which have been advertised on TV and has used it extensively in connection with its business activities over the years. (*Id.* at ¶ 23).

Defendant Bob DeCecco was the Chairman and Chief Executive Officer ("CEO") of co-Defendant As Seen On TV, Inc. from 2009 to 2014, and Defendant Ron Rule is the CEO (as of July 2015) and Chief Technology Officer ("CTO") (since May 2014) of co-Defendants As Seen On TV, Inc. and TV Goods, Inc. (collectively, "Defendants"). (*Id.* at ¶¶ 14,15).

## B.  E-Commerce Websites.

In 2011, Defendants, seeking to take advantage of this market, acquired for $5,000,000 and began operating an e-commerce website located at www.asseenontv.com, on which it sold "As Seen On TV" products (the "ASTV.COM Website"). (*Id.* at ¶ 26). Prior to Defendants' acquisition of the ASTV.COM Website, its seller had approached Telebrands as a potential buyer, and although Telebrands did not acquire the ASTV.COM Website in 2011, it had requested and understood that the assets for sale included both the domains asseenontv.com, as well as seenontv.com – which could be configured to take consumers to the ASTV.COM Website the same as if they had entered the primary domain asseenontv.com into an internet browser. (*Id.* at ¶ 27). In connection with the ASTV.COM Website, Defendants acquired and/or utilized numerous domains (variations of asseenontv.com, like as-seenontv.com and seenontv.com and as-seenontv.com and – to help direct consumers to the ASTV.COM Website, as well as prevent unscrupulous actors from cybersquatting), three trademarks (incorporating the phrase "As Seen On

TV"), and a telephone number (1-866-ASSEENONTV) (collectively, the "Additional Assets"). (*Id.* at ¶ 28).

In mid-2014, Defendants solicited potential purchaser Telebrands in an effort to divest the ASTV.COM Website and the Additional Assets. (*Id.* at ¶¶ 31-35). During negotiations, Telebrands understood the ASTV.COM Website and the trademarks (among the Additional Assets) to be well-known and firmly-established in the minds of consumers seeking to locate the online source of, and purchase, "As Seen On TV" products. (*Id.* at ¶¶ 36, 37). Defendants made no representations that they intended to reenter the business of marketing, promoting, and selling "As Seen On TV" products online after selling the ASTV.COM Website and Additional Assets to Telebrands. (*Id.* at ¶ 35). Thereafter, the parties executed an Asset Purchase Agreement and Related Documents, whereby Telebrands acquired all of the rights, title, and interest in the ASTV.COM Website and the Additional Assets, for $3,000,000.00 (the "Agreement"), including the widely-known and recognized "As Seen On TV" trademark ("ASTV.COM Trademark"). (*Id.* at ¶ 38, Ex. A). Defendants, instead of transferring all of the Additional Assets, retained certain "As Seen On TV"-related domains — potentially with an eye towards monetizing them in a subsequent transaction or enterprise. (*Id.* at ¶ 41). After the transaction, Telebrands improved and streamlined the ASTV.COM Website, on which it marketed, promoted, and sold products that had been or were still marketed, promoted, and sold on television. (*Id.* at ¶ 43). This resulted in attracting hundreds of thousands of consumers who purchased millions of dollars of "As Seen On TV" products. (*Id.*, Ex. B). Defendants, however, secretly retained and withheld certain crucial "As Seen On TV"-related domains, including seenontv.com and seenontvpc.com, which

Defendants knew should have been included in the Agreement and would pose a threat to the ASTV.COM Website's operations.  (*Id.* at ¶ 41).

### C. Defendant Ron Rule's Business Proposal.

*Immediately* after the Agreement was executed in October 2014, Defendant Rule (at that time CTO of Defendant As Seen On TV, Inc.) in his individual capacity and apparently beyond the scope of his employment with As Seen On TV, Inc., made a business proposal to Telebrands.  (*Id.* at ¶ 44).  Defendant Ron Rule proposed to Telebrands that – after he finishes developing a new, proprietary e-commerce technology platform – he resign as CTO of As Seen On TV, Inc., become an employee of Telebrands, integrate his technology platform into the ASTV.COM Website, and together with Telebrands, dominate the online marketplace for marketing, promoting, and selling "As Seen On TV" products on  the ASTV.COM Website located at the domain asseenontv.com.  (*Id.* at ¶ 45).

Defendant Ron Rule, in the process of encouraging Telebrands to accept his business proposal, praised Telebrands' brand strength and market power, while touting his proprietary technology's potential and online retail experience.  (*Id..* at ¶¶ 46-47). While waiting for Telebrands to make a decision regarding his business proposal, Defendant Ron Rule inadvertently revealed that Defendants had continued to maintain the domain GoDaddy Registrar account from which they had transferred the many "As Seen On TV"-related domains to Telebrands pursuant to the October, 28, 2014 Agreement.  (*Id.* at ¶ 49).  Defendant Ron Rule further revealed that this Registrar account contained at least one "As Seen On TV"-related domain that (for reasons unexplained) had been retained, and *not* transferred pursuant to the Agreement.  (*Id.*).

8

That retained domain was <u>seenontvpc.com</u>. (*Id.*)  It is not unreasonable to believe that this Registrar account also contained, and quite likely continues to contain, the domain <u>seenontv.com</u>. (*Id.*).  Ultimately, Telebrands declined Defendant Ron Rule's proposal. (*Id.* at ¶ 50).

### D.  Defendants Launch the New Website Using the Domain <u>www.seenontv.com</u>.

Subsequent to Defendant Ron Rule's failed efforts to join forces with Telebrands, he and other Defendants launched a new (never before existing) e-commerce retail website—located at the primary domain <u>seenontv.com</u> (the "New Website") and using trademarks incorporating the phrase "As Seen On TV"—to market, promote, and sell "As Seen On TV" products, with the intention to compete directly with, and redirect consumers from Telebrands and the ASTV.COM Website (located at the domain <u>asseenontv.com</u>). (*Id.* at ¶ 51, Ex. C).

Defendants' New Website has the following attributes:

1.  It is aesthetically and functionally identical in all material aspects to Telebrands' ASTV.COM Website (*Id.* at ¶ 52);

2.  It is located at the domain <u>seenontv.com</u>, which should have been transferred pursuant to the Agreement, and which is confusingly similar to <u>asseenontv.com</u>, the very domain sold to Telebrands for use with the ASTV.COM Website (*Id.* at ¶ 55, 53);

3.  It utilizes "As Seen On TV" trademarks confusingly similar to the very "As Seen On TV" trademarks it sold to Telebrands for use with the ASTV.COM Website:



Telebrands' ASTV.COM
Trademark

(acquired from Defendants, and
used on the ASTV.COM Website
located at **asseenontv.com**)



Defendants' New Trademark

(used on the New Website
located at **seenontv.com**)

(*Id.* at ¶ 54);

4. It utilizes "As Seen On TV"-related internet search engine keywords and terms that are confusingly similar to those utilized by Telebrands for the ASTV.COM Website (*Id.* at ¶ 61);

5. It features "As Seen On TV" products confusingly similar to those Telebrands markets, promotes, and sells on the ASTV.COM Website, *and* on television (*Id.* at ¶ 53);

6. It features, in a manner likely to confuse, at least one product—the "Copper Pro Pan"—that has never been marketed, promoted, or sold on television (*Id.* at ¶ 62).

Telebrands has recently quantitatively confirmed, via web analytics tools, that the New Website has dramatically disrupted Telebrands' revenue generated by and through its operation of the ASTV.COM Website. (*Id.* at ¶ 60). Telebrands has also concluded that its ASTV.COM Website revenue losses are due in part to Defendants' use and/or purchase of keywords and phrases like "as seen on tv," "seen on tv," "as seen on tv products," and "as seen on tv official site" as part of their search engine marketing and optimization strategies for the New Website. (*Id.* at ¶ 61). Additionally, Telebrands

10

recently confirmed that Defendants are actively selling at least one product—the "Copper Pro Pan"—on the New Website that has never been marketed, promoted, or sold on television. (*Id.* at ¶ 62).

Telebrands has conducted a thorough investigation of the facts at issue and has reached a point where absent a court order or other means by which disclosure can be compelled, it cannot obtain the facts necessary to resolve this dispute. (*Id.* at ¶ 64). For example, Telebrands has attempted to identify with specificity the details regarding when Defendants came to acquire the domain seenontv.com, as well as the development and deployment history of the New Website to the present -- and has been informed by the Defendants' domain Registrar and hosting service (GoDaddy) that without a subpoena it will not supply this office or Telebrands with that information. (*Id.* at 65). One of the key issues before the Court is the history of the New Website in connection with this application for preliminary injunction because it goes to Defendants' intent and knowledge during the negotiations surrounding the Agreement. (*Id.*)

## LEGAL ARGUMENT

### I.    Legal Standard for Expedited Discovery.

District courts have broad power to require early document production and to permit expedited discovery under certain circumstances. *See* Fed. R. Civ. P. 26(d)(1), 30(a), 33(c), 34(b); *KeyBank, Nat'l Ass'n v. Quality Payroll Sys.*, No. CV 06-3013, 2006 U.S. Dist. LEXIS 42078, at *9 (E.D.N.Y. June 22, 2006) (granting request for expedited discovery having found, among other things, harm to the moving party's "commercial reputation in the marketplace").

Courts in the Second Circuit Court of Appeals have "employ[ed] two tests for determining the propriety of an expedited discovery request." *Litwin v. OceanFreight,*

*Inc.*, 865 F. Supp. 2d 385, 402 (S.D.N.Y. 2011).   The first test is based on a

"reasonableness standard." *Id.* (citing *KeyBank*, 2006 U.S. Dist. LEXIS 42078, at *9-10).

The second is a four-factor test first laid out in *Notaro v. Koch*, 95 F.R.D. 403 (S.D.N.Y.

1982).   Under *Notaro*, the party requesting expedited discovery must show:

> (1) irreparable injury; (2) some probability of success on
> the merits; (3) some connection between the expedited
> discovery and the avoidance of irreparable injury, and (4)
> some evidence that the injury that will result without
> expedited discovery looms greater than the injury the
> defendant will suffer if the expedited relief is granted.

*Notaro*, 95 F.R.D. at 405.

In recent years, courts in the Second Circuit, including the Southern District of

New York, "have applied a more flexible standard of 'reasonableness' and 'good cause.'"

*Stern v. Cosby*, 246 F.R.D. 453, 457 (S.D.N.Y. 2007) (citing *Ayyash v. Bank Al-Madina*,

233 F.R.D. 325, 326-27 (S.D.N.Y. 2005)); *accord United States v. Erie Cnty.*, No. 09-

CV-849S, 2010 U.S. Dist. LEXIS 144503, at *11, 11 n.5 (W.D.N.Y. Mar. 6, 2010)

(granting motion for expedited discovery and stating that "[t]he weight of authority in

this circuit rejects the *Notaro* analysis in favor of the reasonableness or good cause

standard, which provides more *flexibility* for the court to order expedited discovery"

(emphasis added)); *Ayyash*, 233 F.R.D. at 326–27 ("[E]mploying a preliminary-

injunction type analysis to determine entitlement to expedited discovery makes little

sense, especially when applied to a request to expedite discovery in order to prepare for a

preliminary injunction hearing."); *see Merrill Lynch, Pierce, Fenner & Smith, Inc. v.*

*O'Connor*, 194 F.R.D. 618, 623-24 (N.D. Ill. 2000) (noting that the *Notaro* test was

similar to rigorous standard required for granting preliminary injunction).

Under the reasonableness standard, "[c]ourts generally assess 'the potential prejudice which will be suffered by the defendant if discovery is permitted, and that which will be experienced by the plaintiff if denied the opportunity for discovery at this stage.'" *Erie Cnty.*, 2010 U.S. Dist. LEXIS 144503, at *12 (quoting *OMG Fidelity, Inc. v. Sirius TechTechs., Inc.*, 239 F.R.D. 300, 305 (N.D.N.Y. 2006)). During this inquiry, the court must consider "the burden of responding to the discovery requests and the likelihood that the proffered discovery will eventually take place." *Id.* (citing *OMG Fidelity*, 239 F.R.D. at 304-05). Courts within the Second Circuit have "further found that where an expedited discovery request is made in contemplation of the filing of a motion for preliminary injunction, the denial of that request *prejudices the moving party*." *Id.* (emphasis added) (citing *Standard Inv. Chartered, Inc. v. Nat'l Ass'n of Sec. Dealers, Inc.*, No. 07 Civ. 2014, 2007 U.S. Dist. LEXIS 27342, at *1 (S.D.N.Y. Apr. 11, 2007); *OMG Fidelity*, 239 F.R.D. at 305.

## II. An Order Directing Expedited Discovery is Appropriate Given Defendants' Continued Misconduct and the Irreparable Harm it is Causing Telebrands.

As more fully laid out above, Telebrands seeks an order permitting reciprocal expedited discovery to obtain relevant information pertaining primarily to (1) Defendants' history of ownership and control of the domain seenontv.com, as well as Defendants' motivations for using it as the primary domain for the New Website, (2) the history and background of the New Website, including its design and development, as well as related pre-launch and ongoing competitive intelligence (including analysis of the ASTV.COM Website and Additional Assets), market research, brand research, intellectual property infringement analysis, search engine optimization strategies, and revenues, and (3) Defendants Bob DeCecco's and Ron Rule's respective roles in the sale

of the ASTV.COM Website, their respective roles in the development and launch of the New Website, and their respective reasons for seeking employment with Telebrands. The requested expedited discovery seeks to ensure that Telebrands is able to obtain material information concerning Defendants' misconduct to aid the Court in its assessment of Telebrands' request to enjoin Defendants from continuing to breach the Agreement by withholding and using the domain seenontv.com, unlawfully operating a website that diverts revenues from Telebrands, continuing to infringe Telebrands trademarks, and continuing to engage in unfair competition..

## A.   Telebrands Meets the Reasonableness Standard for Expedited Discovery.

We respectfully request that the Court apply the reasonableness standard discussed above. Under this approach, courts look to whether the expedited discovery request is reasonable in light of all the circumstances, noting factors such as potential prejudice to the defendant if discovery is permitted versus prejudice to the plaintiff if denied the opportunity for discovery at this stage; the likelihood that the proffered discovery will take place and the burden of responding to the discovery requests; and whether expedited discovery is being requested in aid of a preliminary injunction hearing, bearing in mind that denial of the request may "prejudice[] the moving party." *Erie Cnty.*, 2010 U.S. Dist. LEXIS 144503, at *12.

Here, Telebrands' request for reciprocal expedited discovery is necessary and in the interests of justice because it will allow the parties to create a complete record upon which the Court can make factual findings of misconduct that will aid the Court in resolving Telebrands' request for a preliminary injunction. Telebrands has suffered and will continue to suffer substantial irreparable harm as a result of Defendants' 1) retention

14

and use of the domain seenontv.com, 2) unlawful operation of the New Website, 3) continued infringement of Telebrands' trademarks, and 4) continued engagement in unfair competition (including for false designation of origin, false statement of fact, and false description).

"[E]xpedited discovery is particularly appropriate when a plaintiff seeks injunctive relief" because of the expedited nature of injunctive proceedings. *Ellsworth Associates, Inc. v. United States*, 917 F. Supp. 841, 844 (D.D.C. 1996); *EXL Labs, LLC v. Egolf*, No. 10-6282, 2010 U.S. Dist. LEXIS 131105, at *21 (E.D. Pa. Dec 7, 2010) ("Expedited discovery is particularly appropriate where a Plaintiff seeks injunctive relief.").[2]

Telebrands' expedited discovery is also appropriate because a complete record will better enable this Court to judge the parties' interests and chances for success on the merits. *See Edudata Corp. v. Scientific Computers, Inc.*, 599 F. Supp. 1084, 1088 (D. Minn. 1984), *aff'd in part*, 746 F.2d 429 (8th Cir. 1984) ("Further development of the record before the preliminary injunction hearing *will better enable the court* to judge the parties' interests and respective chances for success on the merits." (emphasis added)). The interests of judicial economy would be best served if the parties were in a position to marshal evidence that factors into the Court's preliminary injunction analysis. *Ellsworth*,

---

[2] Courts routinely allow expedited discovery where the party requesting it moves for a preliminary injunction and where there is a risk of irreparable, immediate injury to it. *See, e.g.*, *EXL Labs., LLC v. Egolf*, 2010 U.S. Dist. LEXIS 131105, at *21; *CIENA Corp. v. Jarrard*, 203 F.3d 312 (4th Cir. 2000); *Wachovia Sec., L.L.C. v. Stanton*, 571 F. Supp. 2d 1014 (N.D. Ia. 2008); *Hausser + Taylor LLC v. RSM McGladrey, Inc.*, No.1:07CV2832, 2007 U.S. Dist. LEXIS 70098 (N.D. Ohio, Sept. 21, 2007); *InterMetro Indus. Corp v. Kent*, No. 3:CV-07-0075, 2007 U.S. Dist. LEXIS 10559 (M.D. Pa., Feb. 12, 2007); *Nextgen Healthcare Info. Sys. v. Messier*, No. 05-cv-5230, 2005 U.S. Dist. LEXIS 27243 (E.D. Pa., Nov. 10. 2005); *Nobel Biocare USA, Inc. v. Lynch*, No. 99 C 5774, 1999 U.S. Dist. LEXIS 23252 (N.D. Ill., Sept. 22, 1999).

917 F. Supp. at 844 (recognizing that having the parties exchange narrowly tailored expedited discovery will conserve judicial resources and promote judicial efficiency, as well as lead to a more accurate determination of whether or not the movant is likely to prevail on the merits of the case). Thus, granting Telebrands' request for reciprocal discovery would be superior to proceeding by motion because it would enable both parties to obtain timely discovery for the narrow, efficient purpose of litigating the merits of Telebrands' preliminary injunction application, whereas motion practice would unnecessarily delay the marshaling of evidence for the preliminary injunction hearing.

In light of all the surrounding circumstances, Telebrands' request for reciprocal expedited discovery is reasonable because Telebrands intends to seek narrow, efficient discovery of information that it does not possess, tailored to the critical issues of its preliminary injunction application. The key information Telebrands seeks is in Defendants' possession, and falls into three broad categories: 1) Defendants' acquisition, ownership, and continued use of the domain seenontv.com, 2) Defendants' research, development, deployment, and continued operation of the New Website, 3) Defendant Bob DeCecco's and Defendant Ron Rule's involvement in the sale of the ASTV.COM Website to Telebrands, involvement in the development and launch of the New Website, and their respective reasons for seeking employment with Telebrands.

On the other hand, there is no significant burden on Defendants because the proposed discovery would not extend beyond the issues raised in Telebrands' preliminary injunction application, and, more importantly, any burden would be outweighed by Defendants' opportunity to receive reciprocal discovery from Telebrands in aid of its opposition, and defense, to Telebrands' preliminary injunction application. Based on the

foregoing, Telebrands respectfully submits that it has met the reasonableness standard and the Court should therefore grant its request for expedited discovery.

**B.**   **Should the Court Apply the Notaro Factors, Expedited Discovery Should Still Be Permitted.**

In the event that the Court decides to apply the *Notaro* factors, instead of the reasonableness standard outlined above, we posit that the factors nevertheless weigh in Telebrands' favor.

**(1)**   **Irreparable Injury.**

As discussed, Defendants' misconduct is causing Telebrands irreparable harm. Telebrands seeks not only damages for Defendants' breach of contract but, more importantly, an injunction to prohibit Defendants from continuing operate the New Website – which diverts revenues from Telebrands, infringes Telebrands' trademark, and allows Defendants to unfairly competition.

Telebrands has recently quantitatively confirmed that Defendants' operation of the New Website has dramatically disrupted the revenue Telebrands has been generating through the ASTV.COM Website. As to trademark infringement and unfair competition, Defendant's marks are confusingly similar to the trademarks Telebrands acquired from Defendants and use in association with the marketing, promotion, and sale in commerce of its well-known "As Seen On TV" products. Consumers seeking Telebrands' "As Seen On TV" products are likely confused by the New Website (and its domain seenontv.com, similar marks and keywords, and similar products). *American Cyanamid Co. v. Campagna Per La Farmacie in Italia S.P.A.*, 678 F. Supp. 1049, 1050-51 (S.D.N.Y. 1987) (granting order to show cause for expedited discovery in trademark litigation context where there was a likelihood of confusion); *Boathouse Group, Inc. v. TigerLogic*

*Corp.*, 777 F. Supp. 2d 243, 254 (D. Ma. 2011) (noting that "public interest is served by preventing consumer confusion" and that in "the context of trademark litigation, irreparable harm is generally presumed if a plaintiff demonstrates a likelihood of consumer confusion"), as the following depictions demonstrate:

Telebrands' injuries suffered as a result of Defendants using the domain seenontv.com, operating the New Website, using confusingly similar marks and keywords, and selling products that have never been sold on television cannot be adequately remedied at law; instead, to prevent further irreparable harm, Defendants must be enjoined from using the nearly identical mark and operating the New Website.

**(2)    Some probability of success on the merits.**

A plaintiff need not demonstrate likelihood of success on every one of its claims. *See Twentieth Century Fox Film Corp. v. Mow Trading Corp.*, 749 F. Supp. 473, 475 (S.D.N.Y 1990) (granting expedited discovery on finding of likelihood of success on two of the plaintiff's four claims). To avoid weighing the Court down with a lengthy analysis of each of Telebrands' claims, for purposes of this Application, Telebrands addresses only some of its claims (trademark infringement and unfair competition), and the probability that it will prevail on those claims.

**a.    *Unfair Competition – False Designation of Origin (Lanham Act (15 U.S.C. § 1125(a)) and New York Common Law***

The elements for an unfair competition claim under New York common law "closely parallel the elements of unfair competition under the Lanham Act." *Medisim Ltd. v. Best Med LLC*, 910 F. Supp. 2d 591, 606 (S.D.N.Y. 2012). Under the Lanham Act, "a plaintiff must adequately allege that the defendant '(1) in commerce, (2) made a false or misleading representation of fact (3) in connection with goods or services (4) that

18

is likely to cause consumer confusion as to the origin, sponsorship, or approval of the goods or services.'" *Fischer v. Forrest*, No. 14 Civ. 1304 (PAE), 2015 U.S. Dist. LEXIS 4395, at *33 (S.D.N.Y. Jan. 13, 2015) (quoting *Naked Cowboy v. CBS*, 844 F. Supp. 2d 510, 516 (S.D.N.Y. 2012)). To prevail on an unfair competition claim pursuant to New York's common law, the plaintiff must also make "some showing of bad faith' on the part of the defendants." *Medisim*, 910 F. Supp. 2d at 606 (quoting *Sly Magazine, LLC v. Weider Publ'ns LLC*, 346 Fed. App'x 721, 723 (2d Cir. 2009) (summary order)).

Telebrands owns all rights, title, and interest in the ASTV.COM Trademark and holds the right to use the ASTV.COM Trademark to market, promote, and sell its own "As Seen On TV" products, including on the ASTV.COM Website. The ASTV.COM Trademark is particularly well-known and firmly-established in the minds of consumers seeking to locate the online source of, and purchase, "As Seen On TV" products. Defendants' New Website prominently utilizes the New Trademark, which is confusingly similar to the ASTV.COM Trademark that they sold and delivered to Telebrands pursuant to the Agreement, and which in turn is used prominently on the ASTV.COM Website.

Defendants' use in commerce, without permission, of the New Trademark, which is confusingly similar (if not outright identical) in terms of font, color, and style to Telebrands' ASTV.COM Trademark, to sell "As Seen On TV" products is likely to cause confusion or mistake, deceive consumers as to the source of Defendants' goods, and/or cause consumers to mistakenly believe that there is an affiliation, connection, sponsorship, or association between Telebrands and the goods, services, and commercial activities of Defendants. Defendants' acts are intended to capitalize on Telebrands'

goodwill for Defendants' own pecuniary gain and profit.  Defendants' acts constitute a false designation of origin because they are likely to cause confusion as to the origin of Defendants' goods, and as to any sponsorship, affiliation, connection, association between Telebrands and Defendants.

Accordingly, Telebrands respectfully submits that it has established "some probability of success on the merits" regarding its unfair competition claims.

### b.   *Trademark Infringement* <br> *(New York Common Law)*

The elements required to prevail on trademark infringement under New York common law mirror the Lanham Act. *Tiffany (NJ) Inc. v. eBay, Inc.*, 576 F. Supp. 2d 463, 494 (S.D.N.Y. 2008).  To prevail on a trademark infringement claim, a plaintiff must establish that "(1) it has a valid mark that is entitled to protection under the Lanham Act; and that (2) the defendant used the mark, (3) in commerce, (4) 'in connection with the sale . . . or advertising of goods or services,' (5) without the plaintiff's consent." *1-800 Contacts, Inc. v. WhenU.com, Inc.*, 414 F.3d 400, 406-07 (2d Cir. 2005) (quoting 15 U.S.C. § 1114(1)(a)); *see Tiffany (NJ) Inc.*, 576 F. Supp. 2d at 495.  Courts have summarized this analysis into a two-prong test: (1) "whether the plaintiff's mark is valid and entitled to protection," and (2) "whether the defendant's use of the mark is likely to cause confusion as to the origin of the goods." *Tiffany (NJ) Inc.*, 576 F. Supp. 2d at 495.

Telebrands owns the widely-known and recognized "As Seen On TV" trademark. The company also holds the right to use the ASTV.COM Trademark to market, promote, and sell its own "As Seen On TV" products, including on the ASTV.COM Website. Defendants use their mark on the New Website, located at the domain seenontv.com, in connection the sale of "As Seen On TV" products that do not originate from Telebrands.

Defendants are doing so without Telebrands' consent and are confusing consumers seeking Telebrands' "As Seen On TV" products. It follows that Telebrands has demonstrated "some probability of success on the merits" of its New York common law trademark infringement claim.

> **(3)    Some connection between the expedited discovery and the avoidance of the irreparable injury.**

The irreparable injury at issue stems from Defendants' unlawful use of mark that confuses and deceives consumers seeking Telebrands' "As Seen On TV" products, while diluting, tarnishing, and disparaging Telebrands' ASTV.COM Trademark. The expedited discovery Telebrands seeks (among other things) information regarding (1) Defendants' knowledge and targeting of Telebrands' ASTV.COM Trademark; (2) Defendants' intention to redirect prospective Telebrands' consumers to the New Website; and (3) any allegations, or evidence, of Defendants' acts of unfair competition in the "As Seen On TV" marketplace – is sufficiently connected to the avoidance of continued irreparable harm.

> **(4)    Some evidence that the injury that will result without expedited discovery looms greater than the injury that the defendant will suffer if the expedited relief is granted.**

Without expedited discovery, Telebrands will be forced to wait additional months, if not longer, before it can obtain sufficient information, documents, and other materials to aid in its application for a permanent injunction. Although Telebrands has engaged in a thorough investigation of the facts central to this dispute, there are still facts germane to the resolution of this matter that Telebrands cannot obtain without court order or engaging in discovery. All the while, Defendants will continue disrupt and divert Telebrands' revenue by their unlawful retention and use of the domain seenontv.com,

continued operation of the New Website located at the domain seenontv.com, continued infringement of Telebrands trademark, and continued engagement in unfair competition. On the other hand, if expedited relief is granted, any harm Defendants suffer will be *de minimis*, especially in light of our request for reciprocal discovery, which will only further assist Defendants in preparing their opposition to Telebrands' claims.

Accordingly, Telebrands respectfully submits that it has established that the *Notaro* factors weigh in its favor. As such, the Court should permit expedited discovery in this matter.

## CONCLUSION

Based on the foregoing, Plaintiff Telebrands Corp. respectfully requests that the Court enter its proposed Order to Show Cause and Order for Expedited Discovery in Aid of Preliminary Injunction, which has been submitted herewith.

Dated: August 22, 2016                Respectfully submitted,


David S. Stone
Riadh Quadir
STONE & MAGNANINI LLP
100 Connell Drive, Suite 2200
Berkeley Heights, NJ 07922
Tel   (973) 218-1111
Fax:  (973) 218-1106
*Attorneys for Plaintiff Telebrands Corp.*